UNITED STATES of America,

v.

The FRESHIE COMPANY, a/k/a New Freshie Corporation, a/k/a Freshie Food Service, Inc., Anthony Pili.

Crim. No. 86–193.

United States District Court, E.D. Pennsylvania.

June 26, 1986.

James A.A. Pabarue, Bucky Mansuy, Asst. U.S. Attys., Philadelphia, Pa., for the Government.

J. Clayton Undercofler, III, Philadelphia, Pa., for defendant Anthony Pili.

Gregory T. Magarity, Philadelphia, Pa., for defendant The Freshie Co.

## MEMORANDUM

NEWCOMER, District Judge.

In a ten-count indictment defendants are charged with violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.* (Counts 1 and 2), mail fraud (Counts 3 through 9) and obstruction of justice (Count 10). Presently before the Court is defendants' Motion to Dismiss Counts 1 and 2—the RICO counts—on the grounds that the indictment fails to allege predicate acts sufficient to form a "pattern" of racketeering activity. For reasons stated below, defendants' motion will be denied.

In the landmark decision of *Sedima S.P. R.L. v. Imrex Co.*, —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the Supreme Court, in footnote, pointed to an area in the statute where courts might limit the broad sweep of the RICO statute without impinging upon the legislative role of Congress. The Court noted:

> As many commentators have pointed out, the definition of a "pattern of racketeering activity" differs from the other provisions in § 1961 in that it states that a pattern *"requires* at least two acts of racketeering activity," § 1961(5) (emphasis added), not that it "means" two such acts. The implication is that while two acts are necessary, they may not be sufficient. Indeed, in common parlance two of anything do not generally form a "pattern." The legislative history supports the view that two isolated acts of racketeering activity do not constitute a pattern. As the Senate Report explained: "The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern." S.Rep. No. 91–617, p 158 (1969) (emphasis added). Similarly, the sponsor of the Senate bill, after quoting this portion of the Report, pointed out to his colleagues that "[t]he term 'pattern' itself requires the showing of a relationship.... So, therefore, proof of two acts of racketeering activity, without more, does not establish a pattern...." 116 Cong.Rec. 18940 (1970) (statement of Sen. McClellan). See also id., at 35193 (statement of Rep. Poff) (RICO "not

aimed at the isolated offender"); House Hearings, at 665. Significantly, in defining "pattern" in a later provision of the same bill, Congress was more enlightening: "criminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." 18 U.S.C. § 3575(e) [18 USCS § 3575(e) ]. This language may be useful in interpreting other sections of the Act. Cf. *Iannelli v. United States,* 420 U.S. 770, 789, 43 L.Ed.2d 616, 95 S.Ct. 1284 [1295] (1975).

Following *Sedima* many courts have focused on the "pattern" requirement to limit RICO suits. Broadly stated, the question is whether the predicate acts meet the requirements of "continuity and relationship."

Here defendants do not contest that the predicate acts are "related", and focus only on interpretation of the "continuity" requirement. Neither the parties nor the Court have uncovered any post-*Sedima* case in the Third Circuit which addresses this issue.[1] I therefore look to the cases in other circuit and district courts for guidance.

■ The continuity requirement is aimed at curtailing use of RICO for charges involving one transaction sliced into a series of acts which occur over a short period of time, are not ongoing, and are not indicative of an open-ended scheme.

Some courts have interpreted the "continuity" requirement to mean that in order to be a pattern, there must be two "criminal episodes" not only two or more related criminal acts in furtherance of one criminal scheme. *See Northern Trust Bank/O'Hare, N.A. v. Inryco,* 615 F.Supp. 828, 832 (N.D.Ill.1985) ("... the common sense interpretation of 'pattern' implies acts occurring in *different criminal episodes,* episodes that are at least somewhat separated in time and place yet still sufficiently related by purpose to demonstrate a continuity of activity," *quoting United States v. Moeller,* 402 F.Supp. 49, 58 (D.Conn.1979)) (emphasis in original); *Allington v. Carpenter,* 619 F.Supp. 474, 478 (C.D.Cal.1985) ("Consistent with this intent to exclude single criminal events, a 'pattern' of racketeering activity must include racketeering acts sufficiently unconnected in time or substance to warrant consideration as separate criminal episodes.").

Others have found that a single fraudulent scheme which encompasses different types of predicate acts over a significant period of time satisfies the "pattern" requirement. *See Bank of America v. Touche Ross & Co.,* 782 F.2d 966, 971 (11th Cir.1986) ("nine separate acts of wire and mail fraud, involving the same parties over a period of three years" satisfied "pattern" requirement); *Kredietbank, N.V. v. Joyce Morris, Inc.,* C.A. No. 84–1903 slip op. at 5 (D.N.J. January 9, 1986) (Sarokin, J.) [Available on WESTLAW, DCTU database] ("in the language of one of the more trusted sources for the definitions of English words, a 'pattern' is '[a]n arrangement or composition that suggests or reveals a design; a configuration ...' WEBSTER'S NEW COLLEGIATE DICTIONARY (C & G Merriam Co.1961). Two acts alone might form a 'pattern' under this definition, but only where they are not only sufficiently connected, but also sufficiently differentiated, to suggest a design or configuration."); *Graham v. Slaughter,* 624 F.Supp.

---

**1.** The government cites the pre-*Sedima* case of *United States v. Salvitti,* 451 F.Supp. 195 (E.D. Pa.), *aff'd without opinion,* 588 F.2d 822 (3d Cir.1978), as the controlling precedent of the Third Circuit on this issue. In *Salvitti* Judge Fullam found that

[A] single, ongoing scheme to defraud by obtaining bribes or kickbacks, which involves a series of unlawful acts, can establish a 'pattern' for purposes of RICO, and ... it is not

necessary to establish two or more totally independent acts.

Since the Court of Appeals has not considered the pattern issue in light of the dicta in *Sedima,* and since an affirmance without an opinion does not provide the basis of the Third Circuit's decision, I believe it is incumbent upon me to look to the other circuits and district courts for post-*Sedima* guidance.

222, 224–25 (N.D.Ill.1985) (RICO "pattern" requires separate criminal transactions or events, but all these acts can comprise one fraudulent scheme and still form a "pattern" provided that the transactions share common perpetrators, victims òr motives, extend over a substantial period of time, and that the transactions do not simply involve ministerial acts).

■ As I interpret the continuity requirement it means there must be racketeering acts over a substantial period of time, which when combined with the relatedness requirement, form a group distinguishable in composition, *i.e.* a "design or configuration," and I am therefore aligning myself with the position of cases such as *Kredietbank* and *Graham.* Nowhere in the statutory language or in *Sedima* do I find any suggestion that a pattern requires different criminal episodes.

To engraft this additional requirement would overreach this Court's authority, would legislate rather than interpret, and thus would be subject to the same sort of attack as the previous judicial attempts to add requirements, such as criminal convictions for the predicate acts and a separate "racketeering injury," both of which were struck down by the *Sedima* Court. 105 S.Ct. at 353–58.

■ Moreover, an inherent tension exists between the dual requirements of relatedness and continuity. Viewed on a continuum, these two requirements must reach some equitable balance to form a "pattern." Judge Sarokin in *Kredietbank* was sensitive to this balance when he stated that the acts must be "sufficiently connected, but also sufficiently differentiated," slip op. at 5. One can easily see that as the acts become more related, the same transactions lose some of their separateness. *See Teleprompter of Erie, Inc. v. City of Erie,* 537 F.Supp. 6, 12–13 (W.D.Pa.1981) (a series of alleged bribes during a fund raiser on one date held insufficient to consti-

tute a "pattern."). On the other hand, if a series of predicate acts satisfied the requirement of separate "criminal *episodes,*" then those acts might well not meet the relatedness requirement, being too disjointed (different subject matter) and too remote (in time).

Here the RICO counts of the indictment charge defendants with one overall goal—to increase profits for defendants through allegedly illicit means. Defendants are charged with bribing Philadelphia School District employees (four of whom are named in the indictment) in order to procure the 1978 Lunch Program contract. Defendants are also charged with bribing these same School District employees during performance of the contract (1978–1981), in order to assure defendants of a more profitable return under the contract.[2] The 7 counts of mail fraud involve defendants' receipt of proceeds under this three-year contract. Last, defendant Pili is charged with obstruction of justice for acts allegedly taken 6 years after the first alleged bribe. In total, defendants are charged with 11 acts of bribery over a substantial period of time (three years), involving common perpetrators; related but distinct methods of criminal activity (two types of bribery, mail fraud, and obstruction of justice), and the enumerated predicate acts are not ministerial in nature.

■ I find that the indictment meets the "pattern" requirement, as defined by RICO and as interpreted by the Supreme Court in *Sedima.*

---

2. Although not explicitly stated in the indictment, the government has represented that the bribes occurring during performance of the contract involved persuading School District employees to substitute meals on the lunch menu which were more profitable for defendants.